### NIXON v. CARNEGIE TRUST CO. et al.

(Supreme Court, Appellate Division, First Department. April 3, 1914.)

PLEDGES (§ 33\*)—ACTION FOR POSSESSION—EVIDENCE—DISCHARGE OF LIEN.

    Plaintiff, in replevin for his stock, which was pledged as security only for a loan made by defendant to C. on C.'s note, is entitled to show just what agreement or contract was made between C. and defendant, when on the day that said note became due defendant accepted from C. his demand note, as though the demand note by itself would not extend payment or change the relation of the parties, thus discharging the lien on the stock, any agreement of such effect then made by them would have that result.

    [Ed. Note.—For other cases, see Pledges, Cent. Dig. §§ 89, 92; Dec. Dig. § 33.\*]

    Hotchkiss, J., dissenting.

Appeal from Trial Term, New York County.

Action by Lewis Nixon against the Carnegie Trust Company, impleaded with others. From a judgment entered on dismissal of the complaint, on a trial before a jury, plaintiff appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

Stuart M. Kohn, of New York City, for appellant.
Frank M. Patterson, of New York City, for respondents.

INGRAHAM, P. J. The action was in replevin to recover the possession of 5,000 shares of the stock of the Standard Motor Construction Company. At the end of the trial both parties submitted motions, the plaintiff to direct a verdict for the plaintiff, and the defendant to direct a verdict for the defendant. There was no suggestion that there was any question for the jury, and counsel stipulated that when the court made its ruling it should be accepted as if the direction had been made to the jury in the presence of the jury, then in court. The court subsequently dismissed the complaint, upon which judgment was entered, and the plaintiff appeals.

There was no substantial dispute about the facts. The plaintiff was the owner of 5,000 shares of the stock of the Standard Motor Con-

---

struction Company. It appeared that in the summer of 1909 the defendant Sexton called upon the plaintiff and stated that he was anxious to secure a loan; that he had a number of securities the actual value of which was far in excess of the proposed loan, but for some reason more securities were wanted, and asked the plaintiff if he would lend him some of this stock; that the plaintiff thereupon delivered this 5,000 shares of said stock to Sexton, and later left for Europe, but upon his return from Europe in the autumn he ascertained that this stock had been placed with other securities for a loan to Charles W. Chapman & Co. upon their promissory note, dated October 8, 1909, payable 60 days after date, for the sum of $66,345.78, which was indorsed by Charles W. Chapman and C. M. Sexton. The plaintiff then called on Mr. Dickison, the president of the bank, and stated to him that the use of this stock by Chapman & Co. was a breach of faith with him; that the stock was the plaintiff's stock, and he wanted it back. Mr. Dickison finally said that at the maturity of the note he would see that the plaintiff got his stock back, and on the 23d of November, 1909, plaintiff wrote the Carnegie Trust Company a letter, stating that this was his stock, and that he had never received the slightest consideration for it, that he protested against the surrender of the stock by the Trust Company in case the loan was paid, except with the plaintiff's written consent. It was further proved that when this note became due on the 7th of December, 1909, the Trust Company accepted a new note, signed by Chapman & Co. and indorsed by Chapman and Sexton, for $67,009.23, payable on demand after date, which was secured by this stock in question, with the other securities deposited to secure the payment of the note of October, 1909; that the plaintiff again demanded the return of this stock, after December 7, 1909, when the original note became due, which demand was refused, whereupon the plaintiff brought this action in replevin to recover the stock.

Upon the trial, the plaintiff, having proved these facts, called as a witness Robert L. Smith, who testified that after the receipt of the letter of November 23, 1909, the plaintiff's stock was segregated from the rest of the collateral held to secure this note of October 8, 1909, and he laid it outside the other collateral; that the Trust Company recognized the claim of the plaintiff, and declared to his counsel that they would return that stock to him on numerous occasions; that he was acting president of the Trust Company on the 7th of December, 1909, when the demand note was taken, and had to do with the transaction as to the taking of the new note. He was then asked whether there was any entry on the books to show that the note of October 7, 1909, was paid, which was objected to and excluded. He was then asked whether, when he took the demand note on December 7, 1909, he took it in payment of the note of October 7th. That was objected to by the defendant and excluded. He was then asked:

"Will you explain the circumstances, Mr. Smith, that you took the note marked 'Plaintiff's Exhibit F,' being a demand note marked 'December 7,' will you state what was said between you and the maker of the note at the time it was taken?"

This was objected to and excluded. It is to be noted that the demand note was for a different amount than that secured by the original note of October 8th; the note of October 8th being for $66,345.78, the demand note being for $67,009.23. The plaintiff's stock had been deposited with the Trust Company as security for the loan to Chapman & Co. The plaintiff had notified the bank that the stock belonged to him, demanded its return, and both the president and the acting president of the bank had assured him that the stock would be returned in December when the note became due.

While I think the Trust Company had the right to retain this stock as security for the payment of the note for which it was pledged, after it received notice that it was the plaintiff's stock, and had been pledged for this loan to Chapman & Co. without the plaintiff's authority, they were bound, upon the payment of that note, as collateral security for which the stock was held, to return it to the plaintiff. If the note of October 7, 1909, was actually paid in consequence of any arrangement between the maker of the note and the bank, then I think it clear that the stock was released, and the plaintiff was entitled to its return. The stock stood in the position of a security for that particular loan made before the Trust Company had notice that plaintiff claimed it. Any binding contract to extend payment of the note, or any agreement between the makers of the note and the bank, which substantially changed the relations of the parties, would discharge the lien upon the stock and entitle the plaintiff to its recovery. And so I think that if, by any agreement based upon a valid enforceable contract, the note of March 7th was actually paid, so that it ceased to be an instrument which the plaintiff could pay, and thus discharge his stock from the lien of the Trust Company and enforce the note against those liable on it, the lien on the stock was discharged and plaintiff would be entitled to recover. Now, what arrangement was made at the time when the note of October 7th became due and the Trust Company accepted this new demand note was relevant to determine whether or not the lien upon the plaintiff's stock continued. The court excluded all testimony as to that transaction, and I think that was error which requires a reversal of the judgment. I am inclined to agree with the court below that merely accepting the note of December 7, 1909, was not an actual extension of the time of payment of the October 7th note, and that the mere acceptance of the demand note of December 7th did not change the relation between the parties, which would entitle the plaintiffs to recover the stock until the note of October 7th was paid. Assuming that the Trust Company could not, after receiving the demand note, have maintained an action to recover the amount of this demand note until the morning of December 8th, there was no extension of payment, for the maker was entitled to the whole of December 7th to pay the note of October 7th, and no action could have been maintained on it until the morning of December 8th. So that on the face of the papers the acceptance of the demand note was not an extension of payment. Nor did it change the relation of the parties to the transaction, but the maker of the note and the Trust Company could make such an arrangement as they pleased in

regard to the payment of the demand note; and whether or not the arrangement that was actually made would have been sufficient to discharge the lien upon plaintiff's stock could not be ascertained until the evidence as to the arrangement that was made was before the court. The plaintiff was entitled to prove the exact agreement or contract made between Chapman & Co. and the Trust Company, and it is useless to speculate upon what such an arrangement might be until the testimony as to what such an arrangement was, was received.

I think, therefore, it was error to sustain the objection to this evidence, and that it is necessary that there should be a new trial.

It follows that the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

CLARKE, SCOTT, and DOWLING, JJ., concur.

HOTCHKISS, J. (dissenting). I see no error in excluding the questions put to the witness Smith by which it was sought to prove that the renewal note was taken in payment of the original note. The former was payable on demand, and was for the exact amount of the latter plus accrued interest. The renewal note expressed nothing more than the legal relations of the parties as they then stood, based on the original note. So far as appears, there was no additional collateral or further security of any kind taken. The debt, evidenced by the original note, remained unpaid. It was for this debt, with interest, that the renewal note was taken, and of which it was the mere evidence. If Smith had testified that the renewal note was taken in payment of the original note, it would not have affected the right of the Trust Company to continue to hold the plaintiff's collateral for the unpaid debt.

I think the judgment should be affirmed.